UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SANDRA KING WILSON and          :
JOSEPH DEPIETRO, individually   :     HONORABLE JOSEPH E. IRENAS
and on behalf of a class of     : CIVIL ACTION NO. 06-1368 (JEI/AMD)
others similarly situated,      :
                                :              **OPINION**
          Plaintiffs,           :
                                :
     v.                         :
                                :
THE COUNTY OF GLOUCESTER;       :
et al.,                         :
                                :
          Defendants.           :


**APPEARANCES:**

KLAFTER OLSEN & LESSER LLP
By:  Seth R. Lesser, Esq.
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
          and
CUNEO GILBERT & LADUCA, LLP
By:  Jonathan W. Cuneo
     Charles LaDuca
     Alexandra C. Warren
507 C Street, N.E.
Washington, DC 20002
          and
LAW OFFICES OF ELMER ROBERT KEACH, III, P.C.
By:  Elmer Robert Keach, III
1040 Riverfront Center
Post Office Box 70
Amsterdam, NY 12010
          and
WILLIAM RIBACK, LLC
By:  William Riback
527 Cooper Street, 2nd Floor
Camden, NJ 08102
              Counsel for Plaintiffs


MADDEN & MADDEN, P.A.
By:  Patrick J. Madden, Esq.
108 Kings Highway East, Suite 200
Post Office Box 210
Haddonfield, NJ 08033
          and

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PA
By:  Richard L. Goldstein, Esq.
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
                Counsel for Defendants


**IRENAS**, Senior District Judge:

     This suit is a proposed class action challenging the

Gloucester County Department of Corrections' policies and practices

regarding the delousing and supervised showers of newly admitted

pretrial detainees.  Presently before the Court is Plaintiffs'

Motion to Certify the Class pursuant to Fed. R. Civ. P. 23(b)(3),

or alternatively, 23(b)(2).[1]  For the reasons stated herein, the

Court will certify the class in two parts: the liability portion of

the suit and the issue of injunctive relief will be certified under

23(b)(2); the portion of the suit seeking compensatory and punitive

damages will be certified under 23(b)(3).


                              **I.**

     The written policies at issue provide:

     The rules of strip searches[2] for new admission have been
     changed by law.  The explanation is as follows: Indictables

---

     [1]  This Court has federal question subject matter jurisdiction pursuant
to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim
pursuant to 28 U.S.C. § 1367.

     [2]  The policy defines three types of searches: "[1] Pat search: A search
of an inmate or visitor in which the inmate's or visitor's clothing is not
removed; [2] Strip search: A search of an inmate which requires that all
clothing is removed during the search; [3] Body cavity search: A visual
inspection or manual search of a person's anal or vaginal cavity."  (Madden
Cert. Ex. 2)

and non-indictables. EXPLANATION: Indictables (felonies) will be showered and searched as past practice . . . . Non-indictables will be patted down, and given a supervised shower.  There will be an officer present throughout the shower and he/she will not leave until the shower has been completed.  A non-indictable will not spread his cheeks, open his mouth, lift up his testicles, etc., however in all cases, all inmate's [sic] clothing will be searched as always. . . . Very close attention must be paid to charges upon admission.  This rule does not apply to persons already incarcerated in the jail. . . .

[After basic booking procedures, including photographing and fingerprinting] [t]he Processing Officer will then escort the inmate to the appropriate strip search / shower room.
a)   If the inmate's charge is an indictable, the officer will conduct a thorough strip search . . .
b)   If the inmate's charge is a non-indictable, the officer will conduct a supervised shower, checking the inmate's clothing.

Prior to the shower the inmate will be deloused by the Processing Officer.  The inmate will be sprayed over the entire body concentrating on the hairy body areas.  The inmate will then sit on the shower room bench for a period of five minutes, then the inmate may take a shower. . . .

If any foreign object is observed or exposed from any body orifice it will not be removed by the officer.  The Processing Officer will notify the Booking Sergeant who will notify the medic for action to be taken.

(Madden Cert. Ex. 2 – General Orders, Chapter 72, Section 8,

"Search Procedures"; Madden Cert. Ex. 3– General Orders, Chapter

72, Section 54, "Booking and Processing of Inmates")(caps in

original).[3]

While Defendant Balicki, Gloucester County's Director of

Correctional Services, testified that the practices at the

Gloucester County Jail varied somewhat from the written policy--

---

[3]  These written policies were very recently changed.  The new policy's effect on the instant Motion will be discussed *infra* at note 5.

for example, he stated that a corrections officer does not watch pretrial detainees shower (Balicki Dep. at p. 138-39)-- it is undisputed that all pretrial detainees are required to completely disrobe before a corrections officer of the same sex and the officer visually observes the detainee completely naked, at least during the officer's application of the delousing spray to the detainee's body.

Plaintiffs contend that the delousing and supervised showering of *all* inmates-- which undisputedly includes those admitted to the Gloucester County Jail[4] on non-indictable charges-- is unconstitutional.  They propose the following class:

> All persons who have been or will be placed into the custody of the Gloucester County Jail after being charged with nonindictable offenses (such as disorderly persons offenses, traffic infractions, and/or civil commitments) and were or will be strip searched upon their entry into the Gloucester County Jail pursuant to the policy, custom and practice of the Gloucester County Sheriff's Department and the County of Gloucester.  The class period commences on March 22, 2004 and extends to the date on which the Gloucester County Sheriff's Department and/or the County of Gloucester are enjoined from, or otherwise cease, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

---

[4]  The Gloucester County Jail houses male inmates while the Female Offender Unit houses female inmates.  Both facilities are part of the Gloucester County Department of Correctional Services, and the parties apparently do not dispute that the written policy applies to both facilities. For convenience, the Court will use "Gloucester County Jail" to collectively refer to both the male and female facilities.

(Amend. Compl. ¶ 17)[5]

The named Plaintiffs are Sandra King Wilson and Joseph DePietro.

*Sandra Wilson*

Wilson has been admitted to the Gloucester County Jail two times during the proposed class period.[6]

On September 26, 2005, Wilson was arrested in the Deptford Mall on suspicion of shoplifting merchandise worth less than $200.00. (Wilson Cert. ¶ 1)  She was taken to the Gloucester County Jail and "strip searched" upon arrival. (Wilson Cert. ¶ 2; Wilson Dep. at p. 112)  Wilson testified that during her 2005 admission, she reported that she was currently taking Methadone and "anti-depression pills," although she states she gave that information after she was searched. (Wilson Dep. at p. 131-34)

_____

[5]  At oral argument on this Motion, Defendants informed the Court that in early to mid-February, 2009, the written policies were changed so as to eliminate any nude observation of detainees admitted only on non-indictable offenses, except upon a determination of reasonable suspicion, or when approved by the Shift Commander or Booking Sergeant. (Madden Supp. Cert. Exs. 22-23)  Thus, the new written policy apparently eliminates the blanket policy of supervised showering and delousing of all newly admitted detainees.

Plaintiffs have asked the Court to refrain from making "any factual or legal determinations" related to the new policy until they have had time to conduct discovery. As Plaintiffs are the moving party here, they may limit their Motion's scope.  Moreover, their request is reasonable and practical under the circumstances, and Defendants have not expressed any objection to such a limitation.  Accordingly, this Opinion only addresses the policies and practices in place at the time this Motion was fully briefed.  To the extent modifications to the certified class may be required after the parties have engaged in discovery related to the new policy, those issues will be separately addressed at a later time.

[6]  At her deposition, Wilson testified that she had been admitted to the Gloucester County Jail a total of seven times, however, most of those admissions occurred before March 22, 2004 (the first day of the proposed class period).

Wilson stated that in connection with the 2005 arrest, she pleaded guilty to a violation of probation.  (Id. at p. 113)

In August, 2006, Wilson was arrested in Mount Ephraim, Camden County.  At the Mount Ephraim police station, Wilson was subjected to a pat search, during which she gave the searching officer the crack cocaine she possessed.  (Wilson Dep. at p. 115)  As a result, Wilson was charged with possession of a controlled substance. (Id.)  According to Wilson, she was transported from the police station to the Camden County Jail.  After serving seven days in Camden County Jail, she was then transported to Gloucester County Jail because she had outstanding warrants in Gloucester County.[7] (Id. at 116)

Wilson testified that each of the times she was admitted to the Gloucester County Jail, the searches were "substantially similar" with "no remarkable differences" (Wilson Dep. at p. 140):

> [T]he female officer took me into the . . . laundry room. . . . They have you completely strip.  They take each item of your clothes, shake it out, and then they tell you to lift up your head, shake it, lift up your arms, lift up each breast, bend over, cough. . . . They sprayed me with bug spray, put me in the shower, and gave me my clothes to get ready to go out into the population. . . . [The female officer] leaves when you are ready to take a shower.

(Wilson Dep. at p. 72; *see also* Id. at p. 96)


*Joseph DePietro*

---

[7]  Wilson testified that at the time of her arrest in Mount Ephraim, she had outstanding warrants in four different counties: Camden, Gloucester, Burlington, and Atlantic. (Wilson Dep. at p. 114)

DePietro testified that he has been admitted to the Gloucester County Jail about a dozen times.  (DePietro Dep. at 39)  He only has a specific memory of one admission to the jail within the proposed class period.

In 2006, he was advised by letter that a warrant had been issued for his arrest for failure to pay child support.  (Id. at p. 36)  DePietro voluntarily contacted the detective assigned to his case and arranged to surrender himself.  (Id. at p. 37)

Upon surrendering at Woodbury Sheriff's Department, the detective escorted DePietro to the Gloucester County Jail where DePietro was booked and searched.  He testified that after a pat-down search with his clothes on, a male officer led him into a small room with a bench and a shower.  (DePietro Dep. at p. 47)  He followed the officer's order to strip and placed all of his clothes on the floor.  (Id. at p. 48)  He was then ordered to open his mouth and then "bend over and spread them," which he also did. (Id. at p. 48, 63)  Lastly, he took a shower and dressed himself in the orange prison outfit given to him.  (Id. at p. 63)  Nothing in the record indicates whether the male officer watched DePietro shower.

The instant Amended Class Action Complaint asserts: a 42 U.S.C. § 1983 claim for violation of the Fourth Amendment to the United States Constitution, and a corresponding claim under the New

Jersey Civil Rights Act of 2004, N.J.S.A. § 10:6-2(c),[8] against the County of Gloucester, the Gloucester County Department of Sheriff, Gloucester County Sheriff Joseph C. O'Leary, Jr., Gloucester County Undersheriff Michael Silvert, Gloucester County Chief Sheriff's Officer Fred Catalano, the Gloucester County Department of Corrections, Gloucester County Department of Corrections Director Robert M. Balicki, Gloucester County Department of Corrections Warden Darryl Johnson, and Gloucester County Department of Corrections Captain Carol Pistorio.  Plaintiffs seek preliminary and permanent injunctive relief preventing the enforcement of the policies, punitive damages, and an award of compensatory damages to both the named plaintiffs and the proposed class.

## II.

The issue raised by a Rule 23 motion is whether a class action is an appropriate litigation vehicle, and not the merits of the claims asserted.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178

---

[8]  After oral argument on this Motion, the Court understands Plaintiffs' claim to be somewhat broader than just a Fourth Amendment violation. Plaintiffs generally assert an invasion of the right of privacy, which of course is protected by the Fourth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 560 (1979) ("We do not underestimate the degree to which these [strip] searches may invade the personal privacy of inmates."), but is also an independent right with other constitutional underpinnings.  *See Griswold v. Connecticut,* 381 U.S. 479, 485 (1965) (recognizing the "penumbral rights of privacy and repose.").  The Amended Complaint, however, does not contain the word "privacy" anywhere in its 22 pages.  Therefore, to the extent the Amended Complaint does not adequately reflect Plaintiffs' intention in this regard, the Court will deem the Amended Complaint amended to make clear that Plaintiffs' claims under state and federal law are based on the alleged invasion of privacy that results from the challenged policies and practices.

(1974); *Chiang v. Veneman*, 385 F.3d 256, 269-70 (3d Cir. 2004). However, the Court may need "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 339 (D.N.J. 1997); *see also In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("[T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits.").

Federal Rule of Civil Procedure 23 creates a two-prong standard for class certification. Rule 23(a) sets forth the four "threshold requirements for all class actions," *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 183 (D.N.J. 2003), which may be summarized as "numerosity, commonality, typicality, adequacy of representation." *Gen. Telephone Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *see* Fed. R. Civ. P. 23(a).[9] Rule 23(b) describes the three categories of maintainable class actions within the Rule. To succeed on their Motion, Plaintiffs must establish all four elements of Rule 23(a) and at least one category of Rule 23(b). *See Chiang*, 385 F.3d at 264.

As noted previously, Plaintiffs seek certification under Rule 23(b)(3) and alternatively 23(b)(2). Rule 23(b)(3) provides that a

---

[9] "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

9

class action may be maintained if, in addition to meeting the Rule 23(a) factors,

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  *In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310.

> A class may be certified under 23(b)(2) if

> [t]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).

"The trial court, well-positioned to decide which facts and legal arguments are most important to each Rule 23 requirement, possesses broad discretion to control proceedings and frame issues for consideration under Rule 23."  *In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310.

### III.

### A. The Rule 23(a) Requirements

*Numerosity*

Plaintiffs estimate, based on the booking records from the Gloucester County Jail, that the proposed class consists of thousands of people.  (Riback Decl. ¶ 3)  Defendants do not contest

the numerosity requirement; indeed, their own estimate of the proposed class exceeds 8,921 "potential claimants."  (Madden Supp. Cert. ¶¶ 5-7).  The Court concludes that the members of the proposed class are sufficiently numerous to justify a class action.


*Commonality*

To satisfy the commonality requirement, Plaintiffs must put forth at least one common issue of law or fact.  *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001); *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).

Plaintiffs have put forth a legitimate question of law common to all proposed class members: whether requiring all newly admitted pretrial detainees to completely disrobe before a corrections officer-- either during a supervised shower or application of delousing spray-- violates federal or state law.

A common question of fact also exists: what is the purpose (or purposes) of the supervised shower / delousing policies and practices?  Defendants assert that the goal of the policies and practices is the promotion of health and hygiene among the jail population.[10]  Plaintiffs assert that this reason is merely pretext

---

[10]  Defendants' counsel acknowledged at oral argument, however, that visual observation of a nude pretrial detainee would allow the corrections officer to observe whether the detainee concealed contraband or anything else under their clothes or affixed to their body.

Additionally, Plaintiffs' counsel asserted at oral argument that Plaintiffs have evidence suggesting that the purpose of the supervised shower was to detect contraband, and not for health and hygiene.  To be clear, the Court need not, and does not, make any factual determination as to the purpose (or purposes) of the policies at this stage of the litigation.

for suspicionless searches for contraband.  The answer to this question will likely inform the Court's analysis of the common legal issue.  *See Bell v. Wolfish*, 441 U.S. 521, 560 (1979) (determining the reasonableness of a search requires a "balancing" of the institution's interests against the privacy interests of the inmates); *Florence v. Bd. of Chosen Freeholders of the County of Burlington,* 595 F.Supp.2d 492, 512 (D.N.J. 2009) (Rodriguez, S.J.) ("*Florence II*") ("The final prong of the *Bell* balancing test concerns the facility's justification for the policy.  Burlington County and Essex County both appeal to *general security concerns*.")(emphasis added).

Accordingly, the Court concludes that the proposed action raises common issues of law and fact subject to class-wide resolution.

*Typicality*

"The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). The proposed class representatives must "possess the same interest and suffer the same injury as the class members," *Falcon*, 457 U.S. at 156; "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if

it is based on the same legal theory." *Baby Neal,* 43 F.3d at 58.

"[T]he threshold for satisfying the typicality prong is a low one."
*Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002).

Guided by the Court's identification of the common issues of
law and fact discussed *supra*,[11] the Court concludes that Wilson's
and DePietro's claims are typical of the class as a whole, insofar
as Wilson and DePietro, when completely nude, were visually
observed by a corrections officer, pursuant to Gloucester County
Jail's policies and practices applicable to all newly admitted
pretrial detainees.  Wilson and DePietro, as well as all of the
proposed class members, suffered the same alleged invasion of
privacy.  That asserted injury resulted from blanket policies and
practices which Plaintiffs claim violate state and federal law.

Defendants argue that Wilson's claims are not typical of the
class because she was admitted to the Gloucester County Jail on an
indictable offense, whereas the proposed class is defined as
persons admitted to the Gloucester County Jail after being charged
nonindictable offenses.  Plaintiffs dispute this contention,
submitting Wilson's September 26, 2005 arrest record which
indicates that Wilson was arrested on suspicion of shoplifting
clothing worth $138.00 from the JCPenney store in the Deptford
Mall, in violation of N.J.S.A. § 2C:20-11b(2).  (Riback Cert. Ex.

---

[11]   *See Falcon*, 457 U.S. at 157 n. 13 ("The commonality and typicality
requirements of Rule 23(a) tend to merge.  Both serve as guideposts for
determining whether . . . the named plaintiff's claim and the class claims are
so interrelated that the interests of the class members will be fairly and
adequately protected in their absence.").

A)  Moreover, the case was prosecuted in municipal court. (Id.;
Madden Cert. Ex. 17)

Wilson's arrest for shoplifting on September 26, 2005 was not
for an indictable offense under New Jersey law.  The shoplifting
offense defined in N.J.S.A. § 2C:20-11 carries different offense
gradations depending on the retail value of the merchandise.  *See*
N.J.S.A. § 2C:20-11c.  "If the full retail value of the merchandise
is less than $200.00," "shoplifting is a disorderly persons
offense."  Id.  "Disorderly persons offenses . . . are not crimes
within the meaning of the [New Jersey State Constitution]," and
there is "no right to indictment by a grand jury nor any right to
trial by jury on such offenses."   N.J.S.A. § 2C:1-4b.  Defendants'
challenge to typicality fails on this point.

Defendants also assert that Wilson's claim, based on her
September 26, 2005 arrest, is not typical of the class because
corrections officers had reasonable suspicion to search Wilson.
Whether or not reasonable suspicion existed, this argument cannot
defeat certification because it is undisputed that Wilson would
have been subjected to a nude visual observation regardless of
whether any officer had reasonable suspicion to suspect that she
was concealing contraband.  The challenged policies and practices
with regard to supervised showers and delousing apply to all newly
admitted pretrial detainees without regard to reasonable suspicion.
As noted above, "factual differences will not render a claim

14

atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58.[12]

Defendant's challenge to the typicality of DePietro's claim fails for the same reasons. Defendants assert that under Gloucester County Jail's written policies, DePietro should not have been strip searched, even though he testified that he was. Thus, Defendants reason, DePietro was not subject to the blanket policy challenged in this suit. The Court disagrees.

DePietro was subject to the blanket policy of nude visual observation of all newly admitted pretrial detainees which does not depend on the crime charged or reasonable suspicion. DePietro may have an independent claim that, in his particular case, Defendants violated their own policy and are liable to him on that separate basis. However, the fact that DePietro may assert an additional claim on his own behalf does not render his other claim atypical of the class. Separate claims by named plaintiffs may be litigated in conjunction with class claims. *See Falcon*, 457 U.S. at 157-58; *see generally* Fed. R. Civ. P. 23(c)(4)("When appropriate, an action may be brought or maintained as a class action with respect to particular issues.").

Accordingly, the Court concludes that Wilson's claim based on

---

[12] *See also* discussion *infra* at p. 19-21.

her September 26, 2005 arrest, and DePietro's claim based on his arrest in 2006, are typical of the proposed class members' claims.

*Adequacy of Representation*

The Third Circuit has adopted a two-pronged test for determinating the adequacy of representation by the named plaintiffs and their counsel: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). "A party challenging the class' representation has the burden to prove that the representation is not adequate." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 233 (D.N.J. 2005); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 519 (D.N.J. 1997).

Defendants do not challenge the first prong of the adequacy inquiry. Moreover, after considering the submissions in support of the instant motion, the Court has concluded that the proposed class counsel is indeed "qualified, experienced, and generally able to conduct" this litigation. *Id.*

As to the second prong, Defendants assert that Wilson's and DePietro's interests are antagonistic to those of the proposed class because their claims are atypical of the class. However, for

16

the reasons explained *supra*, the named Plaintiffs' claims are not

atypical.  Defendants have failed to put forth any meritorious

reason why the named plaintiffs' interests will be antagonistic to

the interests of the proposed class members, and the Court finds

none.  Accordingly, the Court concludes that Wilson and DePietro

adequately represent the interests of the proposed class.

## B. The 23(b)(3) requirements

*Predominance*

With regard to predominance, the Third Circuit has recently

explained,

> Predominance tests whether proposed classes are
> sufficiently cohesive to warrant adjudication by
> representation, a standard far more demanding than the
> commonality requirement of Rule 23(a), requiring more
> than a common claim.  Issues common to the class must
> predominate over individual issues.  Because the nature
> of the evidence that will suffice to resolve a question
> determines whether the question is common or individual,
> a district court must formulate some prediction as to
> how specific issues will play out in order to determine
> whether common or individual issues predominate in a
> given case.  If proof of the essential elements of the
> cause of action requires individual treatment, then
> class certification is unsuitable.

*In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310-11

(internal citations and quotations omitted).  Thus, the Court must

"examine the elements of plaintiffs' claim through the prism of

Rule 23" to determine whether predominance is established.  *Id.* at

311.  Plaintiffs must demonstrate that the elements of their case

are "capable of proof at trial through evidence that is common to

17

the class rather than individual to its members." *Id.*

Turning to the elements of Plaintiffs' claims, the Court begins with the basic premise that "[t]he Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). Thus, generally speaking, at the merits stage, Plaintiffs will have to prove that (1) they were the subject of a search; and (2) said search was unreasonable.[13] The Court concludes that Plaintiffs can make their case for the unconstitutionality of the policies and practices without resort to individual evidence; and therefore common issues predominate.

The main focus of this lawsuit is the visual observation of nude pretrial detainees pursuant to the blanket policies and practices of delousing and supervised showering. The manner in which that observation is carried out is basically the same each time because the observation is done pursuant to the blanket policy and practices adopted by Defendants.

Whether those policies and practices violated class members' state or federal rights is also subject to common determination insofar as the asserted invasion of privacy is the same: the class members' privacy interest in keeping private their nude body and

_____

[13]   Under both § 1983 and the New Jersey Civil Rights Act, plaintiffs must also prove that Defendants are state actors.  However, that issue does not appear to be contested in this case.
    The Court also notes that the New Jersey Civil Rights Act states that a person's rights must be "interfered with or attempted to be interfered with, *by threats, intimidation or coercion*." N.J.S.A. § 10:6-2(c)(emphasis added). However, this potential difference between Plaintiffs' state law claim and their § 1983 claim does not alter the Court's analysis as to class certification.

maintaining their personal dignity.  *Cf. Bell,* 441 U.S. at 559 (the
test for reasonableness "requires a balancing of the need for the
particular search against the invasion of personal rights that the
search entails" considering "the scope of the particular intrusion,
the manner in which it is conducted, the justification for
initiating it, and the place in which it is conducted.").

Defendants, however, assert three reasons for why individual
issues will dominate.  First, Defendants assert that for each class
member, the factfinder will have to determine whether reasonable
individualized suspicion existed.  The Court disagrees.  As an
initial matter, it is not at all clear that individualized
reasonable suspicion has any significant role to play in this case,
at least with respect to liability, because (a) the policies and
practices at issue apply without regard to individualized
reasonable suspicion; and (b) Defendants' stated reason for the
policies and practices is to promote health and hygiene, rather
than to detect contraband.

More importantly, however, Plaintiffs assert a *facial* attack
on the policies and practices of delousing and supervised
showering.  Thus, if the policy is unconstitutional as to any
member of the class, Plaintiffs will be entitled to at least some
form of relief, even if the policies and practices, *as applied,* are
determined not to violate the constitutional rights of some of the
class members.  Accordingly, the Court is not persuaded that

individual determinations of reasonable suspicion will overshadow the common issues to be litigated on a class-wide basis, namely the constitutionality of the Gloucester County Jail's delousing and supervised shower policies and practices.

Plaintiff's second argument against predominance-- that individual damages determinations preclude certification-- also fails.  At oral argument, Defendants predicted thousands of damages mini-trials would be necessary if Defendants are found liable; thus reasoning that individual damages issues would predominate.[14] However, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977).  "[C]ourts routinely find predominance satisfied in class action strip search cases notwithstanding the possibility that an individualized calculation of damages may be necessary." *Florence v. Bd. of Chosen Freeholders of Burlington County*, No. 05-3619, 2008 WL 800970, at *13 (D.N.J. March 20, 2008) ("*Florence I*") (citing cases).[15]  The Court is not persuaded that

---

[14]  As the Court noted at oral argument, Defendants' point cuts both ways.  While individual damages determinations may be necessary and time-consuming, the very fact that thousands of proposed class members have been affected by the same policies and practices also suggests that certification is appropriate.

[15]  *See also* 2 Newberg on Class Actions § 4:25 ("failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable [because of the necessity for individualized damages determinations] is disfavored and should be the exception rather than the rule. . . . There are a number of management tools available to a district court to address any

the potential calculation of individual damages renders the proposed class "[in]sufficiently cohesive." *In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310.

Lastly, Defendants argue that this Court will need to determine whether individual class members are barred from pursuing their claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), for failure to exhaust their administrative remedies.  Assuming without deciding that the instant suit challenges "prison conditions,"[16] this argument cannot defeat a predominance finding because the PLRA only applies to prisoners incarcerated at the time the suit was filed.  *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) ("a prisoner who has been released is not precluded by the PLRA from filing a § 1983 suit for incidents concerning prison conditions which occurred prior to his release.").  The proposed class consists of pretrial detainees admitted to the Gloucester County Jail on nonindictable offenses on and after March 22, 2004.  Thus, while a fraction of the proposed class may be subject to PLRA's exhaustion requirements, all members who had been released by the time this suit was filed on March 22,

---

individualized damages issues . . . including: (1) bifurcating liability and damage trials . . .; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial . . .; (4) creating subclasses; or (5) altering or amending the class.").

[16]  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility. . .").  Defendants have not cited, and the Court has not found, any cases addressing whether pre-admission procedures are prison conditions.

2006, are not subject to the PLRA.[17]  Therefore, exhaustion issues are not likely to predominate over the common issues.

In summary, the Court finds unpersuasive Defendants' arguments against predominance and concludes that common issues predominate.


*Superiority*

Defendants make no independent arguments for why a class action would not be the superior method of adjudication in this case.  For the following reasons, the Court concludes that the class action device is superior than litigation by individual class members.

Several factors inform the superiority analysis:

(A)  the  class  members'  interests  in  individually controlling  the  prosecution  or  defense  of  separate actions;

(B) the extent and nature of any litigation concerning the  controversy  already  begun  by  or  against  class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  All four support certification of the proposed class.  The Court discusses each in turn.

---

[17]  The Court notes that the single case Defendants cite in support their PLRA argument actually undermines their position.  In *Black v. Franklin County*, the court reaffirmed its prior holding that "the PLRA does not apply to any of the Plaintiffs who were no longer prisoners at the time they filed their claim in federal court." 2006 U.S. Dist. LEXIS 73554 at *9 (E.D. Ky. Sept. 28, 2006).

Plaintiffs emphasize factor (A), suggesting that individual recoveries by each member would likely be small, thus providing little incentive for any one person to file suit challenging the policies and practices at issue.  Indeed, another court in this district has held as such in a similar "strip search" case.  *See Florence I*, 2008 WL 800970, at *14 ("Given the relatively small economic stake that any one class member has in this case, the Court concludes that the first [23(b)(3)] factor favors class treatment.").  The Court agrees that the nature of the claim asserted suggests that most individual litigants would not independently pursue their claims.

The parties have not identified any other pre-existing litigation involving the Gloucester County Jail policies and practices at issue in this case.  Therefore the second superiority factor is a non-issue in this case.

Because the Court has concluded that common issues predominate this litigation, interests of economy and efficiency render class certification desirable.  Indeed, the class action vehicle is particularly suitable when, as here, Plaintiffs seek institutional reform.  Moreover, no other litigation exists involving these parties or policies, and the Court sees no reason why litigating the case in this forum would be undesirable.  Thus, the third superiority factor is satisfied.

As to the fourth and last superiority factor, the Court

23

concludes that there are no practical difficulties in managing this class action.  Alternatively, to the extent management difficulties may exist, they are adequately remedied by the Court's separate certification of the liability and damages issues.  *See infra* Section C.

Thus, the class action is the superior method of litigating this case.

## C. The 23(b)(2) requirements

For the reasons just articulated, this entire suit could be certified under Rule 23(b)(3).  However, Plaintiffs have also raised the possibility of certifying the class under Rule 23(b)(2).

The Third Circuit has observed, "an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3) which serve no useful purpose under (b)(2). This principle has been widely adopted in the federal courts." *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 393 (3d Cir. 1981). However, this *entire* suit is not maintainable under (b)(2) because Plaintiffs seek individual compensatory damages and punitive damages, *see Barnes v. The Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998),[18] that are not merely incidental to the equitable

---

[18]   *See also* Advisory Committee Notes, Rule 23(b)(2) (Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.").

24

relief sought in this case, *see Barabin v. Aramark Corp.*, 2003 U.S. App. LEXIS 3532, at *4-5 (3d Cir. 2003)(citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).[19]

On the other hand, the portion of this suit seeking an order enjoining the Defendants from following those policies and practices, is particularly well-suited for certification under (b)(2). *See Barnes,* 161 F.3d at 142 ("The (b)(2) class serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment.")(internal citation and quotation to *Baby Neal* omitted).[20]  This is the quintessential situation where "the party opposing the class has acted . . . on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).

Fortunately, Fed. R. Civ. P. 23(c)(4) allows this Court to separately certify the liability and damages portions of this suit:

> [c]ertification on a claim-by-claim, rather than holistic, basis is necessary to preserve the

---

[19]  "[W]hether damages are incidental depends on: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether damages can be computed by objective standards and not standards reliant upon the intangible, subjective differences of each class members' circumstances; and (3) whether such damages would require additional hearings to determine." *Barabin*, 2003 U.S. App. LEXIS, at *5-6 (quoting *Allison;* internal citation and quotations omitted).

All of these factors support the conclusion that the damages sought are not incidental to the equitable relief sought.  Defendants convincingly argue that even if the Court ultimately holds that the delousing and supervised showering policies and practices are facially unconstitutional, in order to calculate damages, individual inquiries  will still be necessary to determine whether each search was nonetheless justified.

[20]  *See also* 5-23 Moore's Federal Practice- Civil § 23.43[1][c] ("A class action seeking injunctive relief to redress a systematic violation of prisoners' rights may be certified under Rule 23(b)(2).").

25

efficiencies of the class action device without
sacrificing the procedural protections it affords to
unnamed class members. In a case . . . where claims for
injunctive relief intermingle with claims for damages,
certification of a (b)(2) class without individual
treatment of the claims may deny unnamed class members
the notice and opt-out protections of Rule 23(b)(3). On
the other hand, denying certification or certifying
under (b)(3) when (b)(2) certification is appropriate
for part of the class eliminates the efficiencies in
adjudication that Rule 23, and specifically (b)(2),
create. Rule 23(c)(4) explicitly recognizes the
flexibility that courts need in class certification by
allowing certification "with respect to particular
issues" and division of the class into subclasses.

*Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir.

2000)(quoting Fed. R. Civ. P. 23(c)(4)).[21]

In short, certifying the equitable portion of this suit under

(b)(2), and the damages portion under (b)(3), allows for the best

of both worlds.  Certifying the injunctive relief portion of this

suit pursuant to (b)(2) best ensures the efficient litigation of

the issue central to the parties' dispute: whether the Gloucester

County Jail's delousing and supervised showering practices and

---

[21]    *See also Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 167
(2d Cir. 2001) (suggesting separate certification of liability and damages
issues, explaining, "[d]istrict courts should take full advantage of
[23(c)(4)] to certify separate issues in order to reduce the range of disputed
issues in complex litigation and achieve judicial efficiencies.")(internal
citations and quotations omitted); *Lemon v. Int'l Union of Operating Eng'rs,
Local No. 139*, 216 F.3d 577, 581 (7th Cir. 2000) ("The district court could
certify a Rule 23(b)(2) class for the portion of the case addressing equitable
relief and a Rule 23(b)(3) class for the portion of the case addressing
damages. This avoids the due process problems of certifying the entire case
under Rule 23(b)(2) by introducing the Rule 23(b)(3) protections of personal
notice and opportunity to opt out for the damages claims."); *Eubanks v.
Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997)("when a (b)(2) class seeks
monetary as well as injunctive or declaratory relief the district court . . .
may adopt a 'hybrid' approach, certifying a (b)(2) class as to the claims for
declaratory or injunctive relief, and a (b)(3) class as to the claims for
monetary relief.").

procedures violate the federal or state law.  Yet certifying the damages portion of the suit, pursuant to (b)(3), ensures notice to all class members in the event a constitutional violation is held to have occurred.  If the Court finds no liability, the time and cost involved with the notice and opt-out requirements of (b)(3) will be avoided because no damage determinations will be required.  On the other hand, if the Court does find liability, the parties will still benefit from the streamlined litigation of the damages issues, and the procedural protections of (b)(3) will be afforded to class members.

Accordingly, the Court will certify the portion of this suit seeking injunctive relief under Rule 23(b)(2) and certify the damages portion of this suit under Rule 23(b)(3).

### IV.

For the foregoing reasons, the Court will certify the class and appoint Plaintiffs' attorneys as class counsel.  An appropriate Order will be issued in accordance with Fed. R. Civ. P. 23(c) and (g).

Date: March 30, 2009_____     s/ Joseph E. Irenas_____
                                    JOSEPH E. IRENAS, S.U.S.D.J.